**470**

In Re Daniel D. MONTAGUE,
Jr., Bankrupt.

DCA HOMES, INC. (f/k/a Oak Hill
Homes, Inc.), Plaintiff,

v.

Daniel D. MONTAGUE, Jr., Defendant.

Bankruptcy No. 78–833–BK–WMH–W–1.
Adv. No. 3.

United States Bankruptcy Court,
S. D. Florida.

Oct. 5, 1981.

Richard Smith, Hollywood, Fla., for defendant.

Gary M. Farmer, Hollywood, Fla., for plaintiff.

Daniel D. Montague, Jr., Plantation, Fla., bankrupt.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE is before the Court upon Plaintiff's Complaint to determine dischargeability of a debt, and upon this Court's Order of August 18, 1981 setting the cause for trial on the merits on September 23, 1981; and the Court having heard the testimony and examined the evidence presented, and having observed the candor and demeanor of witnesses, and having considered the argument of counsel and being fully advised in the premises, the Court does hereby make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. On July 27, 1978 Defendant filed a Voluntary Petition in Bankruptcy in this Court under the Bankruptcy Act of 1898, as amended.

2. On October 16, 1978 Plaintiff initiated the present adversary proceeding by filing in this Court a Complaint to determine the dischargeability of a debt. Defendant joined issue by filing an Answer on December 5, 1978.

3. This cause was initially tried to the Court on January 5, 1979 on the issue whether the State Court Judgment on which Plaintiff's debt was based was res judicata as to the non-dischargeability issues. On January 25, 1979 this Court entered its Findings of Fact and Conclusions of Law, determining that the State Court Judgment was not entitled to res judicata effect on the bankruptcy non-dischargeability claim and further providing that the Court would go behind the State Court Judgment and afford the parties the opportunity to adduce evidence on the facts underlying the dischargeability issue. Plaintiff took an appeal of this Order to the United States District Court for the Southern District of Florida; and on July 1, 1981 that Court entered an Order affirming this Court's January 25, 1979 Order. Thereafter, this Court set the cause for trial before the Court on September 23, 1981.

4. At the trial on September 23rd, the Defendant failed to appear personally, although his counsel was present. The Court denied the Motion of Richard W. Smith to Withdraw as Counsel of Record, after determining that due notice of the trial had been provided to the Defendant, personally.

5. On September 5, 1972 Delta Excavation, Inc. and Development Corporation of America entered into an agreement in which Delta agreed to supply certain bulldozing services and DCA agreed to pay Delta the sum of Three Hundred and Three

Dollars for each residential lot on which Delta had performed a total of six separate functions during the construction process. Although the agreement purported to expire, by its own terms, at the end of three years; the parties orally agreed to renew the agreement with every provision intact except as to its original term. In the months of January through May, 1976 the agreement appears to have been in full force and effect.

6. The above described agreement was apparently negotiated and signed by its President, DANIEL D. MONTAGUE, the Bankrupt herein. In fact, Mr. MONTAGUE was the only person with whom DCA dealt, during all times material, and no other person appears to have served as a representative of Delta Excavation at any time.

7. Beginning sometime in late December, 1975 or January, 1976 the Defendant began submitting weekly invoices to the Plaintiff in which Defendant claimed payment for services which it turns out had never been performed. Defendant was apparently able to effect payment of the overcharges by the Plaintiff as follows:

(a) Defendant would present to Plaintiff's field superintendent an invoice along with a back-up statement of the specific lots as to which he had performed services. The field superintendent would initial, not the back-up sheet, but the face of the invoice, even though the field superintendent did not have any means to verify the price, and his role was limited simply to ascertaining whether the services were in fact performed.

(b) Afterwards, Defendant would take the initialled invoice, and either substitute the back-up statements or make corrections thereon, and then present it to Plaintiff's accounting department for payment by the "accounts payable" section.

8. Defendant continued his scheme over a period of several months until sometime in early May, 1976 when an accountant in Plaintiff's accounting department discovered an invoice on which the Defendant claimed to have done bulldozing services in an area where the accountant knew that Plaintiff had not yet begun any construction activity.

9. At all times during this period, Defendant alone acted as the representative of Delta Excavation, Inc. or Delta Sod, Inc. and handled all transactions with the Plaintiff. Defendant alone controlled the two corporate entities dealing with the Plaintiff.

10. As a result of the discovery by Plaintiff's accountant, Plaintiff retained the services of a public engineering—land surveying firm to do a survey of the various construction projects, on a lot-by-lot basis to determine what lots had been billed for services and whether those services had been performed. The report prepared by the engineer-surveyor shows that ultimately Defendant billed Plaintiff, and collected from the Plaintiff, for more than Two Hundred and Fifty lots as to which no bulldozing services had been performed.

11. Following the preparation of the report, representatives of the Plaintiff met with the Defendant to discuss the situation, at which time Defendant did not dispute the fact of the overcharges, or indeed their amount, but blamed it on a switch-over from a manual bookkeeping system to a computerized one. At no time relevant did the Plaintiff ever receive any computerized billings from the Defendant or the companies he controlled, and all such invoices were handwritten.

12. The Court finds that the overcharges were effected by the Defendant with the specific intent of causing the Plaintiff to pay for work which in fact had never been performed, which was done by presenting the Plaintiff with invoices which were materially false, in an effort to induce the Plaintiff to pay for services which had never been performed, and in fact were paid by the Plaintiff to the Defendant or to his control.

13. The total amount of the overpayment collected by the Defendant from the Plaintiff amounted to One Hundred Thirty One Thousand Eight Hundred Thirty One Dollars and Six Cents.

14. Plaintiff filed an action in the Florida Circuit Court for the Seventeenth Judicial Circuit seeking a judgment against the Defendant, individually, as well as Delta Excavation, Inc. for recovery of the overcharges, accusing the Defendant of fraud in securing the overpayments. On January 27, 1978 the Circuit Court entered a money Judgment against the Defendant and Delta Excavation, Inc. in the principal amount of One Hundred Thirty One Thousand Eight Hundred Thirty One Dollars Six Cents together with accrued interest in the amount of Eighteen Thousand Nineteen Dollars Fifty Cents, and court costs in the amount of Four Hundred Seventeen Dollars and Sixty Cents. No appeal was taken from the Judgment.

15. Defendant obtained money from the Plaintiff by false pretenses and false representations as to work performed, when in fact Defendant did not perform such work, which false representations were given wilfully and maliciously for the purpose of inducing the Plaintiff to pay money to the Defendant which Plaintiff would not otherwise have paid.

16. Defendant wilfully and maliciously converted the property of the Plaintiff by falsely representing to the Plaintiff that he had performed certain bulldozing work pursuant to the contract when in fact the work had not been performed.

### CONCLUSIONS OF LAW

17. This Court has jurisdiction of the subject matter and the parties pursuant to § 2(a)(7) of the Bankruptcy Act of 1898, as amended and pursuant to 28 U.S.C. § 1471 (1979).

18. The Court has jurisdiction of the parties, and this adversary proceeding to determine dischargeability of a debt was timely brought under this Court's Order of August 10, 1978.

19. Defendant is indebted to the Plaintiff by virtue of the Judgment of the Florida Circuit Court for the Seventeenth Judicial Circuit rendered on January 27, 1978 in the principal amount of One Hundred Forty Nine Thousand Eight Hundred Fifty Dollars Fifty Six Cents together with accrued interest at the rate of ten percent per annum since the date of the Judgment.

20. Defendant's debt to the Plaintiff constitutes a liability for obtaining money by false pretenses and false representations under § 17(a)(2) of the Bankruptcy Act of 1898. See *United States v. McQuatters*, 370 F.Supp. 1286 (W.D.Tex.1973).

21. Defendant's debt to the Plaintiff is nondischargeable under § 17(a)(2) of the Bankruptcy Act, and Plaintiff is entitled to a decree so providing. The Court hereby finds and declares that the debt evidenced by the State Court Judgment owing to the Plaintiff by the Defendant is non-dischargeable under the Bankruptcy Act.